Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2558 | **DATE** | 12/1/2000 |
| **CASE TITLE** | Thompson vs. Madden Mental Health Center | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, defendant's motion for summary judgment (16) is granted as to all counts. Judgment is entered in favor of defendant, John J. Madden Mental Health Center and against plaintiff, William Thompson.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC - 4 2000 | |
| | Notified counsel by telephone. | | date docketed | 24 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | ED-7 FILED FOR DOCKETING 00 DEC -3 AM 10: 45 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM THOMPSON | ) | |
| Plaintiff, | ) ) ) ) | DOCKETED<br>DEC - 4 2000 |
| v. | ) ) | Case No. 99 C 2558 |
| JOHN J. MADDEN MENTAL HEALTH CENTER | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

William Thompson has sued his employer, John J. Madden Mental Health Center, for discrimination based on race and for retaliation. 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). Thompson claims that the Health Center suspended him for seven days in 1998 because he is African-American. He also claims that the suspension constituted illegal retaliation against him for earlier complaints of race and gender discrimination. The Health Center has moved for summary judgment, claiming that Thompson has raised no genuine issues of material fact. Thompson cannot show that the Health Center treated similarly situated employees differently, so we grant the motion.

### Facts

As an Activity Therapist Coordinator, William Thompson organizes and supervises patients' recreational activities at the John J. Madden Mental Health Center, a facility operated by the Illinois Department of Human Services (IDHS). For example, Thompson has organized for many years a

1



luncheon to recognize Black History Month. He has worked at the Health Center since 1993, and has been employed by the IDHS since 1980.

Thompson's long career at the Health Center hit a bump in the road in the spring of 1998. On February 5, Thompson complained in writing to Ken Lee Wade, EEO officer for the IDHS, that he was being discriminated against and harassed. His letter detailed various perceived injustices and mused about a lack of coordination between Health Center employees, including Thompson's direct supervisor Roberto Requena. The letter uses the word "discrimination" twice but gives no hint that Thompson is complaining about racial, gender-based, or any other form of legally prohibited discrimination; rather Thompson seems to be complaining simply that he felt that he was being singled out for unfair treatment as compared with co-workers. On February 25, planning for the Black History Month luncheon went poorly and some last minute scrambling was required. On February 26, Thompson apparently abandoned his assigned work area in order to attend a staff training session for which he had not signed up in advance. And on March 4, a coworker complained that Thompson had been playing basketball with staff from the Engineering Department while a nude patient he was supposed to be supervising wandered off down a hallway.

Thompson responds to these alleged infractions by claiming that either he did nothing wrong or he was disciplined more harshly than his white co-workers. He claims that Kevin Kelly was responsible for compiling a list of Black History Month diners and failed to do so. He alleges that Activity Therapist Kathy Leibich abandoned her assigned work area on the very same day, February 26, on which he was accused of doing so. Furthermore, he argues that he attended the staff training session during his lunch break and that he was not required to notify his supervisor when he was taking lunch. And Thompson charges that other Activity Therapists let down their guard while

supervising nude patients. It is undisputed that all of these co-workers are white and that none of them were disciplined.

The Health Center notes in response that, while Kevin Kelly did indeed fail to provide Thompson with a list, Thompson had overall responsibility to organize the Black History luncheon. Thompson delegated the task of making a list to Kelly but never followed up. With regard to Kathy Leibich, the Health Center points out that Thompson cannot show that Leibich abandoned her work area; Thompson attended classes without notifying his supervisor and without arranging for a replacement to cover his assigned work area. And the "nude patient" claim is met with the response that Thompson was disciplined for failing to keep the patient in view at all times.

Roberto Requena, Thompson's supervisor, investigated all three incidents and decided to discipline Thompson. Requena does not supervise Kelly or Leibich, but it is undisputed that he has never suspended anyone other than Thompson. Accordingly, Thompson was suspended[1] from April 7 to April 14, 1998. Thompson complained to the Illinois Department of Human Rights on April 13 and received a right-to-sue letter. He alleges that the suspension constituted intentional racial discrimination and retaliation.

## Analysis

In employment discrimination cases, we apply the summary judgment standard with special attention to those credibility issues that should be reserved for a finder of fact. *See Robinson v. PPG Indus., Inc.*, 23 F.3d 1159, 1162 (7th Cir. 1994). In considering whether there are genuine issues of material fact for trial, we are required to consider all evidence and draw all reasonable inferences in

---

[1] Although the record does not make this clear, we assume that this suspension was without pay.

3

favor of the non-moving party. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thompson has made two claims, discriminatory discipline and retaliation.

**Discriminatory Discipline**

In order to prove intentional racial discrimination, a plaintiff need not produce direct evidence of racial animus. Thompson is not required to find a smoking gun. Rather, he can rely on indirect evidence by meeting the requirements laid down by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McDonnell Douglas* and following cases have "'established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases.'" *Reeves v. Sanderson Plumbing Products, Inc.*, -- U.S. --, 120 S.Ct. 2097, 2106 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993)).

Thompson must first make out a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. He must come forward with evidence from which a jury could conclude that (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) his employer treated similarly-situated employees outside of his protected class more favorably. *Stockett v. Muncie Indiana Transit System*, 221 F.3d 997, 1001 (7th Cir. 2000). Thompson's evidence on these factors need not be overwhelming or even destined to prevail; rather, he needs to present only some evidence from which a jury could infer that the Health Center suspended him because of his race. *Bellaver v. Quanex Corp.*, 200 F.3d 485, 493 (7th Cir. 2000). This standard is a flexible standard that is not intended to be rigidly applied. *Wohl v. Spectrum Manufacturing, Inc.*, 94 F.3d 353, 359 (7th Cir. 1996) (quoting *Collier v. Budd Co.*, 66 F.3d 886, 890 (7th Cir. 1995)).

In analyzing the "similarly situated" element, the Seventh Circuit has suggested that decision-

makers should be identical for purposes of comparing similarly situated employees at the prima facie stage. *See, e.g., Timms v. Frank*, 953 F.2d 281, 287 (7th Cir. 1992). This is particularly true in a case such as this, where it appears that the Health Center did not have a uniform practice or policy governing supervisors' disciplinary decision-making. When the same supervisor treats employees of dissimilar races differently, the specter of discrimination arises. When separate supervisors treat employees of dissimilar races differently, the specter of discrimination is more remote.

Furthermore, plaintiffs bear the burden of showing that there are "similarly situated" employees who were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Radue*, 219 F.3d at 617-18. Thompson need not show complete conformity with his coworkers, but he must show substantial similarity, including factors such as their respective performance, qualifications, and conduct. *Id. Accord, Spath v. Hayes Wheels International-Indiana, Inc.*, 211 F.3d 392, 397 (7th Cir. 2000). *See also Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992) ("It is fundamental that to make a comparison . . . the plaintiff must show that the 'comparables' are similarly-situated *in all respects*.").

Finally, plaintiffs must show that such employees were treated more favorably. In this case of discriminatory discipline, Thompson should point to other employees who were either suspended for less time or not suspended at all.

The upshot of these Seventh Circuit cases is that Thompson would do well by showing that his supervisor (Requena) punished non-black employees less severely for the same conduct. Alternatively, Thompson could show that the Health Center systematically treated other, non-black employees of similar status much more favorably then it treated him.

5

If Thompson cannot meet this threshold, his prima facie case fails and we need not concern ourselves with the other stages of the *McDonnell Douglas* framework, such as the Health Center's "legitimate reasons" for suspending him, or Thompson's arguments that those reasons are pretexts for intentional racial discrimination.

**Thompson's Prima Facie Case of Discrimination**

As an African-American, Thompson belongs to a protected class. A seven-day suspension can be considered an adverse employment action. *Conley v. Village of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000). These elements of Thompson's prima facie case are not in dispute. With regards to the "job performance" element, Thompson's service at the Health Center appears to have been satisfactory until the Spring of 1998. However, his job performance over the years is not relevant. The focus in this case is whether he was performing satisfactorily at the time of his suspension. *Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1262 (7th Cir. 1993). However, we note that Thompson was not discharged and apparently is still working as an Activity Therapist Coordinator at the Health Center. Furthermore, the issue at the prima facie stage is not whether the suspension was warranted but whether Thompson was unfairly singled out because of his race. *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999) (noting that the burden-shifting scheme must be adapted to the facts of each discrimination case and holding that the plaintiff therein was not required to show satisfactory job performance). Even assuming that Thompson's conduct fell below satisfactory in the eyes of the Health Center, he can make his prima facie case if the Health Center punished his coworkers less severely, or not at all.

Thompson relies on alleged discrepancies between the way he was treated as compared with coworkers of a different race, in particular the lack of discipline applied to Kevin Kelly, a white

6

coworker who the Health Center admits failed to provide a list of Black History Month Luncheon diners.[2] Punishing Thompson for the misconduct of a white coworker raises at least the possibility of racial discrimination.

As stated above, the law of this circuit suggests that Thompson should point to non-black employees with similar performance, qualifications, and conduct who were supervised by Requena and treated more favorably. *Radue*, 219 F.3d at 617-18. Whether or not these are absolute prerequisites for a showing of comparability, they are undeniably factors that must be considered. Here, the record reflects that Requena did not supervise Kevin Kelly, Kathy Leibich, or any other employee who Thompson claims received favorable treatment as compared to himself. Thompson points out that Leibich, just like himself, is an Activity Therapist.[3] But he has not provided evidence to show that her conduct (leaving the Health Center for lunch) is similar to his own (abandoning his assigned work area during his lunch hour to attend an unscheduled staff training session). And though the Health Center admits that white Activity Therapists who allowed patients to walk down the main corridor nude were not disciplined (albeit without its knowledge), Thompson fails to

---

[2] The Health Center cites *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120 (7th Cir. 1994) for proposition that an employee cannot defeat summary judgment by relying on evidence that shows that she "was not entirely responsible for several admitted mishaps." *Id.* at 1125. However, the *Anderson* court focused that part of its analysis on a plaintiff's burden to prove the defendant-employer's proffered reasons as pretextual. *Id.* & n.5 ("We will not discuss the other 'evidence' Anderson offers to show pretext.") Therefore, this authority applies to the third stage of *McDonnell Douglas* (where plaintiffs bear the burden or persuasion) not the first (where they bear a burden of production).

[3] The Defendant incorrectly argues in its motion for summary judgment that Thompson's prima facie case fails because he cannot cite examples of favorable treatment given to other Activity Therapists. Title VII plaintiffs are not required to match their conduct and punishment exactly with employees who have identical job titles. To go that far, it seems to us, would subvert *McDonnell Douglas* by requiring evidence that is tantamount to direct evidence of intentional racial discrimination.

identify these coworkers or provide evidence indicating that their situations are similar to his own. He also fails to point to a coworker of similar status who escaped suspension despite amassing *three* violations akin to his own.

Thompson cites a handful of suspensions of non-black employees at the Health Center, but he makes no effort to meet his burden of showing that these involve situations similar to his. Indeed, many of these examples took place long before he started working at the Health Center (*e.g.*, 1971) and doubtless involved different supervisors, making any comparison suspect.[4] Even if we assume *arguendo* that these non-black individuals were similarly situated (i.e., of similar experience, qualifications, and conduct), the record is clear that they were suspended for periods of time ranging from two days to 29 days. This is not evidence from which a jury could conclude that Thompson was singled out based on his race; quite the contrary.

We believe that this flaw is sufficient to undermine Thompson's prima facie case. Thompson has not met his burden to show that similarly situated employees were suspended for a lesser period, or not at all. Accordingly, the Health Center is entitled to summary judgment on Thompson's discriminatory discipline claim.

**Retaliation Claim**

To establish a prima facie case of retaliation, Thompson must establish that (1) he engaged in statutorily protected expression, (2) he suffered an adverse action, and (3) there is a causal link between the protected expression and the adverse action. *Roth v. Lutheran General Hospital*, 57 F.3d 1446, 1459 (7th Cir. 1995); *Silk v. City of Chicago*, 194 F.3d 788, 799 (7th Cir. 1999).

---

[4]Thompson also repeatedly refers to the gender of other employees, ignoring the fact that his lawsuit has alleged only race discrimination.

8

Evidence of causation can include "suspicious timing or a telling temporal sequence." *Silk*, 194 F.3d at 801 (citing *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1034 (7th Cir. 1999); *Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago*, 104 F.3d 1004, 1014-15 (7th Cir. 1997)). A plaintiff must also show that the allegedly discriminating decisionmaker was "aware of the discrimination allegations at the time" of the discrimination. *Maarouf v. Walker Manufacturing Co.*, 210 F.3d 750, 755 (7th Cir. 2000).

Thompson claims that his suspension in April constituted retaliation for his February 5 complaint to Ken Lee Wade. Two months between a complaint and discipline certainly qualifies as "suspicious timing." *Silk*, 194 F.3d at 801. However, there is no evidence that Requena, the supervisor who disciplined Thompson, knew about the complaint. Also, Thompson fails to explain how the grievances and complaints detailed in his letter can be construed as a complaint of discrimination prohibited by Title VII, which is a prerequisite to making a retaliation claim under that statute. *Hamner v. St. Vincent Hospital and Health Care Center, Inc.*, 224 F.3d 701, 704 (7th Cir. 2000) (citing *Wimmer v. Suffolk County Police Dept.*, 176 F.3d 125, 135 (2d Cir.1999)). Accordingly, the Health Center is entitled to summary judgment on Thompson's retaliation claim.

## Conclusion

The Health Center's motion for summary judgment [16] is granted as to all counts. The Clerk is directed to enter judgment in favor of the defendant.

Dated: December 1, 2000

MATTHEW F. KENNELLY
United States District Judge

9